# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

VISION SPHERE LABS, LLC      §
§
v.      §      CIVIL ACTION NO. 3:25-CV-2278-S
§
ADTRAN, INC.      §

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant ADTRAN, Inc.'s Opposed Motion to Dismiss for Improper Venue or to Transfer Venue to the Northern District of Alabama ("Motion") [ECF No. 10]. The Court has reviewed the Motion, Defendant's Brief in Support of the Motion ("Defendant's Brief") [ECF No. 11], Plaintiff Vision Sphere Labs, LLC's Response in Opposition to the Motion ("Response") [ECF No. 33], Defendant's Reply in Support of the Motion ("Reply") [ECF No. 36], and the applicable law. For the following reasons, the Court **GRANTS** the Motion to the extent that the Court transfers this case to the United States District Court for the Northern District of Alabama.

## I. BACKGROUND

In this lawsuit, Plaintiff asserts patent infringement claims relating to two patents. Pl.'s Compl. for Patent Infringement ("Complaint") [ECF No. 1] ¶¶ 35-52. Plaintiff claims that venue in the Northern District of Texas is proper under 28 U.S.C. § 1400(b). *Id.* ¶ 6. Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Plaintiff alleges that Defendant has committed acts of infringement and has a regional office in this district. Compl. ¶ 6. Defendant is incorporated in

Delaware and has its principal place of business and headquarters in Huntsville, Alabama. Def.'s Br. 2; Compl. ¶ 2.

Defendant moved to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), arguing that Defendant "does not have a regular and established place of business in this district." Def.'s Br. 1. In the alternative, Defendant moves to transfer the case to the Northeastern Division of the Northern District of Alabama. *Id.* at 1 & n.1.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss based on improper venue. On such a motion, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (citation omitted). If venue is improper, 28 U.S.C. § 1406(a) instructs the court to "dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." The decision to dismiss or transfer is discretionary. *Graham v. Dyncorp Int'l, Inc.*, 973 F. Supp. 2d 698, 701 (S.D. Tex. 2013) (citation omitted).

Unlike Section 1406(a), 28 U.S.C.§ 1404(a) allows a court to transfer venue to any other district or division where the suit might have been brought, even if venue is proper in the transferor court. "A party seeking a transfer under Section 1404(a) must show good cause by clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (cleaned up). District courts enjoy "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)).

2

### III. ANALYSIS

Defendant asks the Court to either dismiss Plaintiff's lawsuit or, in the alternative, transfer this case for improper or inconvenient venue. Def.'s Br. 1. Plaintiff responds that venue is proper and that the Court should deny a discretionary venue transfer. Resp. 18. Because the Court concludes that venue is improper and, alternatively, that transfer would serve the convenience of parties and witnesses and the interests of justice, the Court determines that this case must be transferred to the Northern District of Alabama.

### *A. Section 1406(a)*

In determining whether to transfer a case under Section 1406(a), the threshold question is whether the district to which transfer is sought is a district in which the case could have been filed. *Druid Grp., Inc. v. Dorfman*, No. 3:05-CV-00762-M, 2006 WL 2460553, at *4 (N.D. Tex. Aug. 22, 2006). Under 28 U.S.C. § 1400(b), a civil action for patent infringement may be brought in the judicial district where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business. For purposes of the patent venue statute, a "corporation 'resides' only in its State of incorporation." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 262 (2017). Because Defendant is incorporated, and thus resides, in Delaware, venue is only proper in the Northern District of Alabama if Defendant committed acts of infringement in that district and has a regular and established place of business there. *See* 28 U.S.C. § 1400(b). Defendant's principal place of business, which is also its headquarters, is in Huntsville, Alabama. Def.'s Br. 2; Compl. ¶ 2. Further, Defendant's "business is driven by its Huntsville headquarters." Def.'s Br. 2. Therefore, Defendant has a regular and established place of business in Huntsville, Alabama, which is in the Northern District of Alabama. *See Correct Transmission LLC v. ADTRAN, Inc.*, No. 6:20-CV-00669-ADA, 2021 WL 1967985, at *4 (W.D. Tex. May 17, 2021) (holding that Defendant has a regular and established place of

business in the Northern District of Alabama); *CUPP Cybersecurity LLC v. Symantec Corp.*, No. 3:18-CV-01554-M, 2019 WL 1070869, at *6 (N.D. Tex. Jan. 16, 2019) ("Because Symantec's headquarters are located in the Northern District of California, it has a regular and established place of business there."). Additionally, the alleged infringing products "are tightly tied to [Defendant's] Huntsville headquarters" and "were designed and developed and are marketed and sold by employees who work at [Defendant's] Huntsville headquarters." Def.'s Br. 2. Accordingly, Defendant allegedly has committed acts of infringement in the Northern District of Alabama, and this case could have been filed there. *See* 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent."); *see also Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 942 (E.D. Tex. 2018) (stating that allegations of infringement satisfy the "acts of infringement" requirement (citation omitted)).

Having resolved the threshold question in the affirmative, the Court next considers whether venue is proper in the Northern District of Texas. Because Defendant is incorporated in Delaware, venue is only proper in the Northern District of Texas if Defendant committed acts of infringement in this district and has a regular and established place of business in this district. *See* 28 U.S.C. § 1400(b). To show that a defendant has a regular and established place of business in a district, a plaintiff must meet "three requirements: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1287 (Fed. Cir. 2021) (citation and internal quotation marks omitted). Because the third requirement is dispositive, the Court does not reach the first two requirements.

In the Complaint, Plaintiff alleges that Defendant has a regional office in this district ("Richardson Facility"). Compl. ¶ 6. However, the Richardson Facility is leased and operated by

4

Adtran Networks North America Inc. ("Networks"), an affiliate of Defendant. *See* Def.'s Br. 3; Pl.'s Sealed App. in Supp. of Resp. [ECF No. 34] Ex. C, at 5. Plaintiff argues that the Richardson Facility, although not a place of Defendant, may be imputed to Defendant because Defendant and Networks "are merely alter egos of the same parent company," Resp. 7, and Defendant ratified the Richardson Facility as its place of business, *id.* at 11-12.

In support of its corporate veil-piercing argument, Plaintiff argues that Defendant is an alter ego of its parent company, Adtran Holdings, Inc. ("Holdings"), pointing to the fact that, among other things, Holdings is the sole stockholder of Defendant, the entities share common directors, Holdings receives all profits and losses and provides funds for Defendant's operations, and Holdings controls Defendant's general policy and daily operations. *Id.* at 7-8. Similarly, Plaintiff argues that Networks is an alter ego of Holdings because Networks is indirectly majority owned by Holdings, the entities share common directors and an officer, and Holdings funds the parent company of Networks, which in turn provides funds to Networks. *Id.* at 9-10. According to Plaintiff, because Defendant and Networks are both alter egos of Holdings, there is "no meaningful distinction between any of Defendant, [Holdings], and [Networks]" and the Richardson Facility, which is leased by Networks, can be attributed to Defendant. *Id.* at 5.

To establish an alter ego relationship between two corporations, one corporation must have control "over the internal business operations and affairs of" the other, and "100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) (citations omitted); *see Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336-37 (1925) (finding that the "corporate separation" between a parent and its subsidiary, "though perhaps merely formal, was real" where the parent employed the subsidiary to conduct business in

5

another state and the parent exercised some control over the subsidiary). Thus, to attribute Networks's facility to Defendant, Plaintiff must show that the "degree of control exercised by" Defendant over Networks is "greater than that normally associated with common ownership and directorship." *Hargrave*, 710 F.2d at 1160. Whether Networks and/or Defendant are alter egos of Holdings is irrelevant to the analysis. Here, Plaintiff has only shown that Defendant and Networks share common directors and officers. Resp. 2. Networks is not owned by Defendant, and Defendant has no control over Networks. Def.'s Br. 3; Decl. of Timothy Santo [ECF No. 12] ¶ 10. Further, Defendant and Networks observe corporate formalities by maintaining separate accounts, financial records and statements, and assets. Def.'s Br. 3; Decl. of Timothy Santo ¶¶ 12, 17-18. Therefore, Plaintiff has not met its burden to rebut the "the presumption of institutional independence of related corporate entities." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004).

Next, Plaintiff argues that Defendant ratified the Richardson Facility by listing the Richardson Facility as a regional office on its website, without reference to any other entity. Resp. 11-12. When considering whether a defendant ratified a place of business to make it its own, a court considers, among other things, whether the defendant "exercise[d] . . . attributes of possession or control over the place;" stored materials at the place "so that they c[ould] be distributed or sold from that place;" "list[ed] the alleged place of business on a website, or in a telephone or other directory; or place[d] its name on a sign associated with or on the building itself." *In re Cray Inc.*, 871 F.3d 1355, 1363-64 (Fed. Cir. 2017). However, the defendant must "actually engage in business from that location." *Id.* at 1364. None of Defendant's business is carried out at the Richardson Facility. *See* Def.'s Br. 3; Decl. of Timothy Santo ¶ 23. Further, none

6

of Defendant's employees work at the Richardson Facility. *See* Def.'s Br. 3; Decl. of Timothy Santo ¶¶ 21-22. Accordingly, Defendant did not ratify the Richardson Facility.

Because the Richardson Facility is not a place of business of Defendant, Defendant does not have a regular and established place of business in this district. *See Andra Grp., LP*, 6 F.4th at 1287. Thus, venue is improper in this district, and the Court determines that transfer to the Northern District of Alabama is in the interest of justice.

### B. Section 1404(a)

Even if venue was proper in the Northern District of Texas, the Court would transfer this case to the Northern District of Alabama for the convenience of the parties and witnesses and the interest of justice. Courts analyzing a discretionary venue transfer consider private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citation omitted). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the cost of attendance for witnesses; and (4) all other practical problems. *Id.* (citation omitted). As to the first three factors, Defendant has shown that, to the extent evidence or witnesses will be necessary, the Northern District of Alabama is a more convenient location. *See* Def.'s Br. 9-12. Defendant's personnel who designed, developed, and marketed the products accused of infringement and financial personnel who track the sales of the products are all located in Huntsville, Alabama. Reply 6-7. Defendant identified nine potential witnesses, willing and unwilling, residing in Huntsville, Alabama. *Id.* at 6-8 (footnote omitted); Def.'s Br. 11-12. Five of these witnesses are "knowledgeable regarding the most important aspects of the case—the design, development, and operation of the accused products," and one witness is knowledgeable regarding the "sales and costs of the accused products." Reply 6-7. The remaining three witnesses are knowledgeable regarding one of the

7

products accused of infringement. Def.'s Br. 12. On the other hand, Plaintiff has identified six potential witnesses, willing and unwilling, located in the Northern District of Texas, but none of those witnesses are knowledgeable about the design, development, and operation of the accused products. Resp. 15-17. Further, evidence related to the design, development, and manufacture of the accused products is located in Huntsville, Alabama. *See* Reply 7-8; Def.'s Br. 11. This includes the source code, which is stored on servers located at Defendant's Huntsville headquarters, is subject to security restrictions, and can be accessed by engineers working at the Huntsville headquarters. Def.'s Br. 11; Reply 8.

As to the fourth factor, Plaintiff argues that, because Plaintiff has another ongoing case in this district relating to the same asserted patents, it "would be more cost effective and efficient to have both cases remain in this [d]istrict." Resp. 17. Defendant does not identify any other practical problems not already identified under the first three factors. *See* Reply 9; Def.'s Br. 12. Assuming, without deciding, that the fourth factor weighs in favor of Plaintiff, the Court concludes that the private interest factors weigh in favor of transfer because the other three factors show that the Northern District of Alabama is a more convenient location.

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *In re Volkswagen AG*, 371 F.3d at 203 (citation omitted).

As to the first factor, Plaintiff argues that resolution of this case would be more expeditious in this district because the median time to trial in this district is 24.3 months, as opposed to 34.5 months in the Northern District of Alabama. Resp. 18. Defendant contends that "other data indicates less congestion in the Northern District of Alabama." Reply 10. During the 12-month

period ending September 30, 2025, the Northern District of Texas had 615 weighted filings per judgeship, whereas the Northern District of Alabama had 358. U.S. DIST. CTS. – JUD. CASELOAD PROFILE, https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0930.2025.pdf (last visited Apr. 2, 2026); *see also Radoszewski v. Plastics Indus. Ass'n*, No. 3:22-CV-1482-B, 2022 WL 17330464, at *6 (N.D. Tex. Nov. 29, 2022) ("By quantifying case complexity, weighted filing statistics give a more complete picture of docket congestion than simple caseload statistics can provide."). The Court concludes that the Northern District of Alabama at this time may very well be able to resolve this case in a more expeditious manner. The first factor weighs in favor of transfer.

The second factor also weighs in favor of transfer. "Transfer is appropriate where none of the operative facts occurred in the [transferee district] and where the [transferee district] ha[s] no particular local interest in the outcome of the case." *La Day v. City of Lumberton*, No. 2:011-CV-237 (JRG), 2012 WL 928352, at *3 (E.D. Tex. Mar. 19, 2012) (citing *In re Volkswagen*, 545 F.3d at 318). Here, no operative facts occurred in the Northern District of Texas, and this district has no particular local interest in the outcome of the case. Therefore, the Court may look to the location of the incident, witnesses, evidence, and the parties. *Id.* The "core of the allegedly infringing activities were and are carried out by [Defendant's] personnel working" at the Huntsville headquarters. Reply 9. Further, as set forth above, evidence related to and witnesses knowledgeable about the important aspects of this case are all located in Huntsville, Alabama. Def.'s Br. 10-11; Reply 6-8; Accordingly, the local interests favor the Northern District of Alabama. The third factor is neutral because the issues in this case involve federal law. *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1004 (E.D. Tex. 2009) (citing, among other sources, *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)). And the fourth factor is

also neutral, as there are no potential conflict of laws issues. The Court concludes that the public interest factors weigh in favor of transfer.

Because the private and public interest factors weigh in favor of transfer to the United States District Court for the Northern District of Alabama, the Court would transfer this case under Section 1404(a) even if venue was proper in this district.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant ADTRAN, Inc.'s Opposed Motion to Dismiss for Improper Venue or to Transfer Venue to the Northern District of Alabama [ECF No. 10] only to the extent that the Court **GRANTS** Defendant's alternative request to transfer this case. *See* Mot. 1. It is **ORDERED** that this case is **TRANSFERRED** to the United States District Court for the Northeastern Division of the Northern District of Alabama.

**SO ORDERED.**

SIGNED April 7, 2026.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

10